# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,     :    Case No. 2:19-cr-125

- vs -     Judge Sarah D. Morrison

ELDON DRAPER,

    :

        Defendant.

## **OPINION AND ORDER**

This matter is before the Court for consideration of Defendant's Motion to Suppress Evidence Obtained from an Unlawful Search and Seizure (ECF No. 31), the Government's Response in Opposition (ECF No. 40), and Defendant's Reply to the Government's Response (ECF No. 41). Defendant also requests an evidentiary hearing.

In his Motion, Defendant asks the Court to suppress all evidence obtained from the search of his home because the search warrant was not based on probable cause. Specifically, Defendant argues that the search warrant is invalid because (1) the information in the affidavit is insufficient to support a finding of probable cause as to the crimes listed in the warrant; (2) probable cause cannot be based on wholly conclusory statements; (3) probable cause cannot be based on an informant without corroboration; (4) the affidavit and addendum to the search warrant contain false statements and omissions; (5) there is an insufficient nexus between the place searched and the evidence sought; (6) the search warrant is overly broad; and (7) Defendant was not provided a copy of the warrant at the time of the search. In his Reply, Defendant also argues that the warrant is invalid, in part, because it relies on stale information.

1

For the following reasons, the Court **DENIES** Defendant's Motion to Suppress, including the request for an evidentiary hearing. However, Defendant is **GRANTED** leave to file a second motion to suppress pursuant to *Franks v. Delaware* if upon review of Detective Richards' interview of Defendant, he deems such motion warranted.

I.  FACTS

The facts provided herein are drawn from the affidavit and addendum in support of the search warrant. (ECF No. 31-2).

On April 6, 2019 at 10:40 pm, Defendant Eldon Draper reported his 2008 Chevy Avalanche stolen to the Columbus Police Department ("CPD"). Defendant alleged that while he was sleeping, his live-in girlfriend, Whitney Cousins, took his only set of keys, stole his truck, and set it on fire. At 2:15 am, the Columbus Fire Department ("CFD") located Defendant's truck in the alley to the rear of 1776 Oakwood Avenue, Columbus, Ohio, in response to a call regarding a car fire. CFD Arson Investigator Henegar viewed security video from Defendant's next-door neighbor and observed an individual much larger than Ms. Cousins leaving Defendant's house and getting into his truck at the time in question.

On April 11 at 12:40 am, Defendant called 911 to report that Ms. Cousins was in his backyard shooting into his house at him. Defendant stated that he could see Ms. Cousins through his kitchen window. CPD officers arrived and determined that three rounds were fired into the back door of Defendant's house. CPD Detectives Laurie Carney and Adam Richards processed the scene. They recovered three spent .38 rounds inside an interior kitchen cabinet. At the time, the back exterior of the house was completely dark with no exterior lights. The kitchen window was approximately four feet to the left of the back door.

The next day, Detective Carney and Investigator Henegar interviewed Ms. Cousins at CPD headquarters. Ms. Cousins told the officers that she fled Defendant's residence around 6:00pm on April 5, 2019 and went to Delaware County. At that time, Defendant's truck was still in his driveway. After she fled, Defendant's landlord told her that neighbors were complaining because Defendant was outside shooting a gun on the night of April 10. Ms. Cousins also told officers that Defendant owned a .38 revolver, which he kept in his nightstand. Ms. Cousins stated that several weeks prior, Defendant asked her to draft a fraudulent letter to a financial institution reporting his house had burned down. She also stated she left her identification card and all of her personal papers in Defendant's truck when she left the house on April 5.

Based on this information, Detective Carney concluded that Defendant had falsely reported his truck stolen and set it on fire because Ms. Cousins had left him. She also concluded that Defendant fired three shots into the back of his residence, then called the police and falsely reported that Ms. Cousins had committed the shooting.

On April 13, Franklin County Municipal Court Judge Mark Hummer issued a search warrant for the residence of Defendant located at 948 Lawrence Drive, Columbus, Ohio. Detective Carney provided an affidavit and two-page addendum outlining the investigation. Based upon the affidavit and addendum, Judge Hummer issued a search warrant and authorized the seizure of

> Evidence of the commission of the crime of Felonious Assault ORC 2019.11 (A-2) and Arson ORC 2909.02, and crimes yet unknown, for firearms, vehicle keys, personal papers of one Whitney Cousins, cell phone and evidence of the crimes of Felonious Assault, Arson and crimes yet unknown.

(ECF No. 31-2). A search was conducted and five items were seized as evidence, including a phone, Ms. Cousins' personal papers, a Smith & Wesson .38 caliber revolver, .38 caliber ammunition, and a vehicle key.

On May 29, 2019, Defendant Eldon Draper was indicted on one count of Possession of a Firearm by a Person Convicted of a Misdemeanor Crime of Domestic Violence, in violation of 18 USC §§ 922(g)(9) and 924(a), one count of Possession of Ammunition by a Person Convicted of a Misdemeanor Crime of Domestic Violence, in violation of 18 USC §§ 922(g)(9) and 924(a), one count of Felon in Possession of a Firearm, in violation of 18 USC §§ 922(g)(1) and 924(a), and one count of Felon in Possession of Ammunition, in violation of 18 USC §§ 922(g)(1) and 924(a). Thereafter, Defendant was arrested pursuant to a warrant and has been detained pending trial. Defendant's trial is scheduled for December 16, 2019.

On October 14, 2019, Defendant filed a suppression motion challenging the validity of the search warrant and requesting an evidentiary hearing.

## II. MOTION TO SUPPRESS

Pursuant to the Fourth Amendment, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

> One of the touchstones of the reasonableness requirement is that the police must generally obtain a warrant based upon a judicial determination of probable cause before entering the home. The job of the magistrate judge presented with a search warrant application is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*United States v. Brown*, 828 F.3d 375, 381 (6th Cir. 2016) (internal citations and quotations omitted). Probable cause is a "flexible, common sense standard" which requires no showing that the officer's belief is correct or more likely true than false. *Texas v. Brown*, 460 U.S. 730, 742, (1983). "A practical, nontechnical probability that incriminating evidence is involved is all that is

4

required." *Id.* (internal quotations omitted); *see also Farm Labor Org. Comm. v. Ohio State Highway State*, 308 F.3d 523, 555 (6th Cir. 2002). In reviewing the sufficiency of the evidence supporting probable cause, the Court is generally "limited to the information presented in the four corners of the affidavit." *Brown*, 828 F.3d at 381.

### A. Charges Listed in Warrant

Defendant first argues that the search warrant is insufficient because the information in the affidavit does not support a finding of probable cause that Defendant committed the specific crimes of arson and felonious assault. Specifically, Defendant argues that the evidence in the affidavit supports that the home was vacant when Defendant allegedly fired shots into it on August 11, negating an element of felonious assault, Ohio Rev. Code § 2903.11(A)(2).

Defendant does not point to legal authority and the Court is not aware of any that requires that a search warrant application contain probable cause for each element of the specific crime(s) under which a defendant may eventually be charged. *See United States v. Williams*, No. 05-80403, 2005 WL 2127597, at *4 (E.D. Mich. Aug. 31, 2005). Rather, "[t]he probable cause inquiry of whether an individual committed a crime is related but distinct from the probable cause inquiry for a search warrant." *United States v. Abboud*, 438 F.3d 554, 572 (6th Cir. 2007). "To demonstrate probable cause to justify the issuance of a search warrant, an affidavit must contain facts that indicate a fair probability that evidence of a crime will be located on the premises of the proposed search." *Id.* (internal quotations omitted). In other words, "[t]he critical element in a reasonable search is not that the owner of property is suspected of crime but that there is reasonable cause to believe that the specific things to be searched for and seized are located on the property to which entry is sought." *United States v. Brooks*, 594 F.3d 488, 492–93 (6th Cir. 2010). Accordingly, the Court rejects this argument.

5

### B. Wholly Conclusory Statements

Defendant next argues that the addendum to the search warrant was insufficient because it contained "wholly conclusory statements" that Defendant was lying and framing his girlfriend.

An affidavit that includes only wholly conclusory statements fails to the meet the probable cause requirement. *United States v. Dunning*, 857 F.3d 342, 346 (6th Cir. 2017). However, "an affidavit setting out the reasons for a belief, as opposed to merely stating a belief, is not conclusory." *United States v. Allen*, 211 F.3d 970, 973–74 (6th Cir. 2000). Such is the case here.

The addendum to the search warrant does articulate Detective Carney's belief that Defendant is the one who set his car on fire and shot into his residence, contrary to Defendant's reports to police. However, the addendum also includes Investigator Henegar's observation that the security footage of the individual getting into the truck was inconsistent with Ms. Cousins' physical stature, Detective Carney's determination that Defendant's statement regarding the shooting at his house was inconsistent with the physical evidence, and Ms. Cousins' various statements implicating Defendant in the crimes he reported: she was not in Franklin County on the night of the crimes alleged, Defendants' neighbors told her landlord that Defendant was shooting a gun on the night of April 10, Defendant owned a gun that matched the description of the casings found at the scene of the shooting, and Defendant previously requested Ms. Cousins draft a fraudulent letter alleging fire damage to his house.

Defendant's Motion fails on this ground.

### C. Informant Without Corroboration

Defendant next argues that because probable cause was based on an informant without corroboration, the warrant is invalid. Specifically, Defendant argues that the failure to include

Ms. Cousins' criminal history in the search warrant affidavit deprived the magistrate judge of Ms. Cousins' bias and motivation in providing information to the police.

Ms. Cousins was first a suspect, and then a named witness in the instant investigation. However, even if the Court treats Ms. Cousins as a "named informant" in this case, "named informants, unlike confidential informants, require little corroboration." *United States v. Williams*, 544 F.3d 683, 690 (6th Cir. 2008). "Statements from a source named in a warrant application . . . are generally sufficient to establish probable cause without further corroboration because the legal consequences of lying to law enforcement officials tend to ensure reliability." *United States v. Hodge*, 714 F.3d 380, 384–85 (6th Cir. 2013). Moreover, the affidavit did disclose that Ms. Cousins and Defendant were in a relationship, that the two had gotten into some kind of disagreement causing Ms. Cousins to leave the residence, and that Ms. Cousins was on probation at the time of her interview. Accordingly, the court rejects Defendant's argument that the warrant was not supported by probable cause on this ground. That said, the Court will analyze whether the failure to include Ms. Cousins' detailed criminal record in the affidavit was a material omission justifying Defendant's request for a *Franks* hearing.

### D. Request for *Franks* Hearing

Defendant next argues that he is entitled to an evidentiary hearing because there were false statements and material omissions made by Detective Carney that invalidate the search warrant. A defendant is entitled to an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), if he makes a substantial preliminary showing that (1) "the affiant included . . . either knowingly and intentionally or with reckless disregard for the truth . . . a false statement in the affidavit[;]" and (2) "the probable-cause finding required the allegedly false statement." *United States v. Brown*, 732 F.3d 569, 575 (6th Cir. 2013). "[A] *Franks* hearing is also justified

7

when there has been a material omission in the affidavit." *United States v. Hampton*, 760 Fed. Appx. 399, 404 (6th Cir. 2019). "[A] *Franks* hearing is granted [in this circumstance] only if the defendant 'makes a strong preliminary showing that the affiant *with an intention to mislead* excluded critical information from the affidavit, and the omission is critical to the finding of probable cause[.]'" *Id.* (emphasis in the original) (quoting *Mays v. City of Dayton*, 134 F.3d 809, 815 (6th Cir. 1998)).

### 1. False Statement

The addendum to the search warrant affidavit includes that Ms. Cousins told officers that Defendant's landlord, Raymond Smith, called and told her "the neighbors were complaining because Mr. Draper was outside shooting off a gun on Wednesday night." (ECF No. 31-2). Defendant contends that Detective Carney acted with reckless disregard for the truth by including this statement in the search warrant affidavit and not interviewing Mr. Smith or Defendant's neighbors, who Defendant alleges would have told her that they did not see anyone shooting a gun on the night in question and had not informed anyone that it was Mr. Draper. The Court disagrees.

"The intentionally or recklessly false statement must be made by the affiant herself, not the non-governmental informant." *United States v. Rodriguez-Suazo*, 346 F.3d 637, 648 (6th Cir. 2003). Regardless of what the neighbors or Mr. Smith might have told police if interviewed, Defendant has made no offer of proof to support that Detective Carney entertained serious doubts as to the truth of her statement in recording what Ms. Cousins told her or had obvious reasons to doubt the accuracy of that information in her affidavit. *United States v. Colquitt*, 604 Fed Appx. 424, 429 (6th Cir. 2015). Even if some of the information contained in the search warrant ultimately could be shown to be false, Defendant points to no evidence that Detective

8

Carney intentionally or recklessly misrepresented facts in order to secure the search warrant. *United States v. Bethal*, 245 Fed. Appx. 460, 472 (6th Cir. 2007); *see also* Mays, 134 F.3d at 816 ("*Franks* recognizes that information an affiant reports may not ultimately be accurate, and is willing to tolerate such a result at that early stage of the process, so long as the affiant believed the accuracy of the statement at the time it was made."). Contradictions and inconsistencies among various witnesses does not establish, in and of itself, that one witnesses' statement was false. *United States v. Rose*, 714 F.3d 362, 370 (6th Cir. 2013).

That said, even if the Court were to find that Defendant made a substantial preliminary showing that Detective Carney acted in reckless disregard for the truth in failing to verify Ms. Cousins' statement with Mr. Smith or Defendant's neighbors, the Court can remove the statement by Ms. Cousins and still find enough in the affidavit to provide a magistrate with a basis for finding a fair probability of locating contraband of arson and felonious assault in Defendant's residence. Removing that reference, the information in the affidavit includes: Defendant's truck was set on fire on April 6, Investigator Henegar viewed security footage in which he observed an individual larger than Ms. Cousins getting into Defendant's truck on April 6, Ms. Cousins stated that she had been in Delaware County since April 5, Mr. Draper asked Ms. Cousins several weeks prior to type up a letter to a financial company falsely informing them his house had burned down, Ms. Cousins stated that Defendant had a .38 revolver in his nightstand in the house, officers recovered three spent .38 rounds from Defendant's house that came through the back door, the back exterior of Defendant's house was completely dark when he claimed to see Ms. Cousins in the backyard firing shots into the rear of his house through his kitchen window, and the kitchen window sat approximately four feet to the left of the back door.

9

Defendant is not entitled to a *Franks* hearing on this "false statement."[1]

### 2. Material Omission

Defendant argues that Detective Carney's failure to include Ms. Cousins' prior criminal history in the search warrant affidavit was a material omission. Again, the Court disagrees.

Contrary to Defendant's assertion in his Reply, the affidavit did provide that Ms. Cousins was on probation at the time she was interviewed. Moreover, while the fact that someone has a criminal history might make them less reliable than a member of the general public, "that is hardly a reason to doubt the reliability of the information given to the affiant." *U.S. v. Fowler*, 535 F.3d 408, 416 (6th Cir. 2008). Undoubtedly, Detective Carney had Ms. Cousins' detailed criminal history in her possession or had access to that information, in the same way she had access to Mr. Draper's lengthy criminal record. But "[n]ot all information in the affiant's possession need be included in the warrant affidavit." *Hampton*, 760 Fed. Appx. at 404; *see also Allen*, 211 F.3d 970, at 975 ("The affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added.").

More importantly, however, Defendant fails to make any preliminary showing that Detective Carney omitted Ms. Cousins' criminal history "*with an intention to mislead*" Judge Hummer. *Id*. "[T]he standard to obtain a *Franks* hearing for a material omission is higher than a false statement and is only merited in rare cases." *Id.* Defendant has not met that standard here.

---

[1] In his Reply, Defendant argues for the first time that Detective Carney also made a false statement in the affidavit when she described the individual getting into Mr. Draper's vehicle as larger than Ms. Cousins. "[I]t is well-established that a party cannot raise new issues in a reply brief; he can only respond to arguments raised for the first time in opposition." *United States v. Ledbetter*, Nos. 2:15-CR-080, 2:14-CR-127, 2015 WL 5854554, at *3 (S.D. Ohio 2015) (internal quotations omitted); *see also* S.D. Ohio Crim. Rs. 1.2, 1.3; S.D. Ohio Civ. R. 7.2(d). The Court declines to address this argument.

Accordingly, Defendant is not entitled to a *Franks* hearing on this alleged "material omission."

### 3. Detective Richards' Interview of Defendant

On November 18, 2019, Defendant moved this court to subpoena both Detective Richards' testimony and "[c]opies of any audio or video recordings taken of any interviews of Eldon Draper conducted by or with Detective Adam Richards between April 11, 2019 and April 13, 2019." (Motion, ECF No. 43). Defendant asserted that "[w]hat information was known by the Detectives and provided or more specifically not provided to the Magistrate Judge in the application for the search warrant is a key issue in the pending Motion to Suppress Evidence . . . ." (*Id.*). The Court granted the request as to the production of any audio or video recordings only. (ECF No. 49).

It appears from the November 18 Motion that Defendant was signaling a request for a *Franks* hearing based on what may have been captured in that interview. However, it would have been premature to make a determination regarding whether an evidentiary hearing was warranted when neither Defendant nor the Court had any information as to what may have been omitted or included in the recorded interview. Accordingly, if after reviewing the interview provided by CPD Defendant believes a *Franks* hearing is warranted, Defendant is granted leave to file a second motion to suppress based on that limited issue by December 4, 2019.

### E. Insufficient Nexus

Defendant next argues that the April 13 search warrant failed to establish what evidence officers believed would be found in Defendant's residence given that a search was already conducted on April 11 with consent of Defendant.

"There must be a nexus between the place to be searched and the evidence to be sought." *United States v. Frazier*, 423 F.3d 526, 532 (6th Cir. 2005) (internal quotations omitted). In other words, there must be "reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought.'" *Id.* (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978)). "The belief that the items sought will be found at the location to be searched must be supported by less than *prima facie* proof but more than mere suspicion." *Bethal*, 245 Fed. Appx. at 464 (6th Cir. 2007) (internal quotations omitted).

The affidavit provides that on April 11, detectives processed the scene of the shooting at Defendant's residence, which included the back exterior of the house. According to Mr. Draper's account of events, officers had no reason to look for additional evidence of the arson and felonious assault in Defendant's house. However, after examining the inconsistencies at the scenes of the crimes and speaking with Ms. Cousins on April 12, detectives suspected Defendant had actually committed the crimes he reported and determined there may be evidence of those crimes in his house. Specifically, Ms. Cousins stated to police that Defendant had a .38 firearm in his nightstand in the residence, which matched the casings found in the interior of his home on August 11. Defendant also stated to police that he had only one set of keys to the truck that he alleged Ms. Cousins stole and set ablaze. *See Bethal*, 245 Fed. Appx. at 465 (holding that courts are "entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the crime and type of offense"). The Court finds there was a sufficient nexus between the "things" to be searched for and Defendant's residence.

Defendant's Motion is denied on this ground.

### F. Overly Broad

Next, Defendant argues that because the search warrant seeks to locate "any other evidence of the crimes and crimes not yet known" it is overly broad.

The Fourth Amendment requires warrants to "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "The degree of specificity required depends on the crime involved and the types of items sought." *United States v. Blakeney*, 942 F.2d 1001, 1026 (6th Cir. 1991). "The use of a generic term or a general description is not per se violative of the fourth amendment." *Id.* at 1027. If the court does find that portions of a warrant are overly broad, the remedy is to "sever the overbroad portions of the warrant from those portions that are sufficiently particular." *United States v. Ford*, 184 F.3d 566, 578 (6th Cir. 1999); *Abboud*, 438 F.3d at 576.

The Court agrees that the catch-all clause raised by Defendant is overbroad. *See United States v. Greene*, 250 F.3d 471, 477 (6th Cir. 2001). Contrary to cases where the courts have upheld "broadly worded categories of items to be seized[,]" the open-ended phrase "evidence of . . . crimes yet unknown" (ECF No. 31-2) "create[s] [the] danger of unlimited discretion in the executing officer's determination of what is subject to seizure" guarded against by the Fourth Amendment. *United States v. Ables*, 167 F.3d 1021, 1033 (6th Cir. 1999). However, severing this portion of the search warrant does not implicate any of the evidence seized. The firearm, Ms. Cousins' personal papers, vehicle keys, and cell phone were specifically delineated in the warrant. Further, given the information in the affidavit, the ammunition seized is arguably "[e]vidence of the commission of the crime of Felonious Assault . . . ." (ECF No. 31-2); *see United States. v. Castro*, 881 F.3d 961, 966 (6th Cir. 2018) ("A warrant that empowers police to search for something satisfies the particularity requirement if its text constrains the search to

evidence of a specific crime."). Accordingly, Defendant's overbreadth argument does not operate to suppress any evidence.

### G. Execution of Search Warrant

Defendant next argues that Detective Carney "continuously fail[ed] to comply with the rules" by providing Defendant "after the fact, a copy of the search warrant and an inventory that is not a duplicate of what later gets filed with the court." (Motion, unnumbered p. 13, ECF No. 31).

Pursuant to Fed. R. Crim. P. 41(f)(1)(C), "[t]he officer executing the warrant must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken or leave a copy of the warrant and receipt at the place where the officer took the property." This rule is statutory in nature and is not required by the Fourth Amendment. *United States v. Crumpton*, 824 F.3d 593, 617 (6th Cir. 2016). "[A]lthough the procedural steps enumerated in [Rule 41] are important and should not be disregarded, they are ministerial and [a]bsent a showing of prejudice, irregularities in these procedures do not void an otherwise valid search." *Id.* (internal quotations omitted and alterations in original).

Defendant fails to articulate any prejudice he suffered as a result of the alleged deficiency under Fed. R. Crim. P. 41. Accordingly, Defendant's Motion is denied on this ground.

### H. Stale Information

Finally, in his Reply brief, Defendant argues for the first time that Ms. Cousins' statement to officers that Defendant possessed a gun and kept it in his nightstand was stale information and should not be considered in determining the sufficiency of the warrant. Putting aside Defendant's procedural deficiency, even if the Court were to construe Defendant's

14

argument as tenuously addressing a point raised in the Government's Response, his argument fails. *See Ledbetter*, 2015 WL 5854554, at *3.

"In seeking to establish probable cause to obtain a search warrant, the affidavit may not employ stale information, and whether information is stale depends on the inherent nature of the crime." *Brooks*, 594 F.3d at 493 (internal quotations omitted). The purpose of a staleness test is "not to create an arbitrary time limitation within which discovered facts must be presented to a magistrate." *Greene*, 250 F.3d at 480 (internal quotations omitted). Rather, the court considers several factors to determine whether information in the affidavit is stale including, "the character of the crime (chance encounter in the night or regenerating conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), [and] the place to be searched (mere criminal forum of convenience or secure operational base?)." *Id.* at 480–81 (internal quotations omitted). The standard of review for staleness is the same as for determining the sufficiency of the warrant affidavit. *Id.* at 480.

Although Ms. Cousins did not specifically articulate when she observed the revolver as it relates to time, the language from the affidavit that Defendant "owned a .38 revolver and kept it in the night stand" supports a perception of current events. Moreover, this statement was made "so closely related to the time of the issue of the warrant[—within one day—]as to justify a finding of probable cause at that time." *United States v. Church*, 823 F.3d 351, 356 (6th Cir. 2016) (internal quotations omitted). The place to be searched was also the residence where Defendant and Ms. Cousins lived, suggesting that there was some permanence to Defendant's base of operation. *See Greene*, 250 F.3d at 481 (citing *United States v. Yates*, 132 F. Supp. 2d 559, 565 (E.D. Mich. 2001)). And the information provided regarding the specific location of the firearm within Defendant's residence indicated an "enduring utility to its holder." *Id.* at 480–81

15

(internal quotations omitted); *see also United States v. Lancaster*, 145 Fed. Appx. 508, 513 (6th Cir. 2005) (finding that information given by a confidential informant that defendant had fired a firearm two years ago was not stale); *United States v. Pritchett*, 40 Fed. Appx. 901, 906 (6th Cir. 2002) ("Firearms are durable goods and might well be expected to remain in a criminal's possession for a long period of time."). The Court is not persuaded that Judge Hummer acted arbitrarily in determining there was a firearm in Defendant's residence at the time the warrant was issued.

Defendant's Motion fails on this ground.

### III. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motion to Suppress and the request for an evidentiary hearing. (ECF No. 31).

Defendant is **GRANTED** leave to file a second motion to suppress pursuant to *Franks v. Delaware* upon review of Detective Richards' interview of Defendant by **DECEMBER 4, 2019** if warranted.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
SARAH D. MORRISON
UNITED STATES DISTRICT JUDGE